UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KARA JANE STEINMEYER,<br><br>    Plaintiff,<br>v.<br><br>TRISTAN COUVARES, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-00258-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

Plaintiff Kara Jane Steinmeyer brings this action against Defendant Tristan Couvares ("Defendant"), asserting various state law claims arising from an allegedly exploitative, non-monogamous dating relationship between Plaintiff and Defendant. (ECF No. 9 ("FAC").) Defendant, appearing pro se, filed a motion to dismiss.[1] (ECF No. 14 ("Motion").) For the reasons explained below, the Court grants the Motion.

**II.   BACKGROUND[2]**

Plaintiff is a single mother of three living in Incline Village, Nevada, who was diagnosed with Multiple Sclerosis ("MS") as a teenager. (ECF No. 9 at 4.) Despite her diagnosis, she scored in the 98th percentile of her GED, owned and operated a business for seven years, and has now worked in tech recruiting for the last ten years. (*Id.*) She and Defendant first met in 2019 while both parties were on contract working in technical recruiting services. (*Id.* at 6.) That same year, Defendant witnessed a physical altercation between Plaintiff and her ex-boyfriend. (*Id.*) In December 2021, Plaintiff and Defendant encountered each other again, when Defendant applied for a HR job at Plaintiff's then-

---

[1]Plaintiff responded (ECF No. 19 ("Response")) and Defendant replied (ECF No. 20 ("Reply")). Both parties additionally filed errata. (ECF Nos. 17, 22.)

[2]The following facts are adapted from the Complaint.

employer, and Defendant text messaged Plaintiff about his job application. (*Id.*) Plaintiff had recently suffered a MS relapse that resulted in a month-long hospitalization between December 2021 and January 2022. (*Id.* at 6-7.) Defendant asked Plaintiff to fast track his application, and Plaintiff felt obligated to, given their prior interactions. (*Id.* at 7.)

Defendant began to correspond with Plaintiff daily about the open position, and during their communications, Defendant disclosed that he was the primary agent and executor for many of his relatives' health care. (*Id.*) He falsely represented himself as the owner of multiple expensive vehicles, the advisor to multiple businesses, and as being involved in various companies from which he would receive commissions. (*Id.*)

In February 2022, Defendant flew to Reno, Nevada, claiming that he wished to help her recover from her MS relapse. (*Id.*) After he arrived, he was informed by Plaintiff's employer that he was ineligible for the open position due to the results of his background check. (*Id.* at 8.) From January 2022 through April 2024, Plaintiff and Defendant were involved in a "non-monogamous dating relationship" and Defendant also served as a caretaker during Plaintiff's medical recovery at times. (*Id.* at 5.) Defendant lived with Plaintiff for a few weeks at a time, and spent holidays, birthdays, and special occasions with her. (*Id.*) During this time, Defendant allegedly manipulated, exploited, and defrauded Plaintiff in various ways explained below.

In March 2022, Defendant drove Plaintiff to help her complete an errand, and they got in an accident while he was driving. (*Id.* at 8.) Plaintiff was only a passenger. (*Id.*) Defendant asked Plaintiff to claim that she was driving the car, so that he would not be arrested due to an outstanding felony charge. (*Id.*) Plaintiff submitted a report to her insurance to confirm that she had reported herself as the driver. (*Id.* at 9.) Defendant promised that he would pay for the deductible, repairs, any increase in Plaintiff's insurance, and other costs or fees, but he never did. (*Id.* at 8-9.)

In March 2022, Defendant called Plaintiff from Los Angeles, California multiple times to complain that he didn't have money for food or transportation. (*Id*. at 9.) Around March 18, 2022, Defendant gained access to Plaintiff's Chase Bank account, as Plaintiff

changed the privacy and security settings of her accounts at his behest. (*Id.* at 9-10.) He repeatedly used her account for various transactions over the next two years, sometimes promising to reimburse her and sometimes denying that he made transactions (*Id.* at 10-16.)

In May 2022, Defendant notified Plaintiff that he had a fungal infection on his scalp. (*Id.* at 11.) Plaintiff later caught this fungal infection because of Defendant's nontreatment. (*Id.*) This caused her MS to flare up, resulting in hospital bills. (*Id.* at 18.)

In August 2022, Defendant represented to Plaintiff that his friend and business advisor, Jordan Clancy, said that Defendant needed to add his name to Plaintiff's bills to demonstrate residency in Nevada. He then registered his business, The Startup Accelerator, Inc., which was a shell limited liability company that had not actually officially opened. (*Id.* at 13.) This company later opened in July 2023, and Defendant did not "share his proceeds with her" as he had promised. (*Id.* at 15.)

In addition to Defendant's misrepresentations detailed above, Defendant misrepresented the following: if Plaintiff lost her job, Defendant would take care of her (*id.* at 11); he would purchase her cryptocurrency and make her his beneficiary on "all of his accounts" (*id.*); he was a day trader (*id.* at 12); and he would split gambling earnings with her (*id.* at 13).

In April 2024, Plaintiff was laid off and reached out to Defendant to ask about previous agreements and discussions about money owed to her. After a few interactions and Defendant's offer to give her his "NCAA winnings" Defendant stopped responding. (*Id.* at 16.) Defendant's conduct caused Plaintiff to suffer from emotional distress which resulted in Complex Post Traumatic Stress Disorder, and she was also later diagnosed with autism. (*Id.* at 17.)

Arising from these events, Plaintiff asserts seven state law claims for relief: (1) negligence/negligence per se; (2) fraudulent misrepresentation; (3) breach of oral

contract; (4) detrimental reliance[3]; (5) unjust enrichment; (6) intentional infliction of emotional distress; and (7) exploitation of a vulnerable adult in violation of state law. (*Id.* at 18-15.)

### III.  DISCUSSION

Defendant, appearing pro se, moves to dismiss the FAC for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(a). (ECF No. 14.) *See* Fed. R. Civ. P. 8; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a complaint, while legal conclusions are not entitled to the assumption of truth). The Court will address Defendant's arguments as to each time in turn.

#### A.   Negligence/Negligence Per Se

Defendant argues that Plaintiff fails to plead a claim because the FAC does not identify a specific statute that the Defendant allegedly violated, and she fails to plead that Defendant owed Plaintiff a duty of care that would create liability for negligence. (ECF No. 14 at 3.) Defendant also argues that Plaintiff failed to sufficiently plead facts to establish that the fungal infection she caught exacerbated her MS. (*Id.* at 4.) Plaintiff, in her Response, argues that she sufficiently pled her claim because the FAC alleged that:

> (1) Mr. Couvares knowingly had a fungal infection; (2) the fungal infection was contagious; (3) Ms. Steinmeyer was exposed to the fungal infection; (4) Mr. Couvares owed Ms. Steinmeyer a duty of reasonable care to avoid foreseeable harm; (5) Mr. Couvares knew that Ms. Steinmeyer had a compromised immune system and was vulnerable to infection; and (6) Ms. Steinmeyer contracted the same type of fungal infection as Mr. Couvares, resulting injuries to her body and person requiring extensive medical treatment.

---

[3]Plaintiff's FAC alleges detrimental reliance as a cause of action and Plaintiff's Response states that Plaintiff "goes as far as making an entirely separate claim for relief under detrimental reliance." (ECF No. 19 at 21-22.) The Court can find no authority, and Plaintiff cites to none, to support detrimental reliance as a standalone cause of action under Nevada law.

4

(ECF No. 19 at 6.) Plaintiff additionally specifies a statute—NRS § 441A.180—that she alleges Defendant violated and argues that she is "using negligence per se to establish the elements of her claim." (*Id.*) Plaintiff also argues, citing to a variety of cases but none from Nevada or the Ninth Circuit, that even if Defendant had no heightened duty of care, courts have "consistently found that negligent transmission of infections disease as well as failure to disclose a disease" are sufficient for a cause of action. (*Id.* at 7.)

A claim for negligence under Nevada law requires a plaintiff to establish "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). "[N]egligence and negligence per se . . . are in reality only one cause of action. Negligence per se is only a method of establishing the duty and breach elements of a negligence claim. *Cervantes v. Health Plan of Nevada, Inc.*, 263 P.3d 261, 264 n.4 (Nev. 2011). To prevail on a negligence per se claim, "a plaintiff must prove that (1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages." *Brochu v. Foote Enters., Inc.*, 381 P.3d 596 (Table), 2012 WL 5991571, at *3 (Nev. 2012).

The Court generally agrees with Defendant that Plaintiff has failed to state a claim because she has failed to plead sufficient facts to show that any duty was breached. Plaintiff cites to no legal authority to support her claim that Defendant owed her a special duty of care because Defendant promised to help her recover from her MS relapse. Moreover, to the extent that Plaintiff argues that *other* jurisdictions have found that "negligent transmissions of infectious disease as well as failure to disclose a disease" are sufficient to state a cause of action, Plaintiff can cite to no binding legal authority to establish such a duty in this jurisdiction. And in any event, Plaintiff alleges in her FAC that Defendant warned her on or about May 2, 2022 that he acquired a fungal infection on his scalp. (ECF No. 9 at 11.)

Additionally, Plaintiff alleges that in February 2024, she was dealing with rashes and fungal infections. (*Id.* at 16.) As Plaintiff argues in her Response, "In Nevada, proximate cause is defined as 'any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.'" *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980). (ECF No. 19 at 8.) But nowhere in the FAC can the Court discern even basic information, such as when Plaintiff acquired the fungal infection and when her existing medical conditions were exacerbated, from which the Court could find causation.

As to Plaintiff's negligence per se claim, Plaintiff suggests in her Response that Defendant violated NRS § 441A.180 as the basis of her negligence per se claim. Defendant argues in his Reply that this is "an improper attempt to amend the pleadings through a response brief" and that the statute does not create a private right of action. (ECF No. 20 at 3.) The Court agrees. Plaintiff has failed to mention any statute on the face of the FAC. Moreover, as a matter of law, the Court finds it unlikely that Plaintiff can successfully argue that NRS § 441A.180 can be used to assert her private civil action. *See Doe v. Mozer*, No. 2:16-cv-00210-KJD-VCF, 2016 WL 3452489, at *4 (D. Nev. June 21, 2016) (granting motion to dismiss on negligence per se claim because "there is no indication the legislature intended NRS 441A.180 to be enforced through private civil actions.").

The Court finds that Plaintiff has failed to state a claim for negligence or negligence per se.

**B.     Fraudulent Misrepresentation**

Defendant argues that Plaintiff's fraudulent misrepresentation claim fails to meet the heightened particularity standard required under Federal Rule of Civil Procedure 9(b). (ECF No. 14 at 4.) Plaintiff counters that she met her burden because she adequately specified the time, location, specific content, and identities of the parties to the misrepresentation. (ECF No. 19 at 9.)

To prove fraud, a plaintiff must show (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance." *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Moreover, pleading fraud with particularity under Rule 9 requires "an account of the 'time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Here, the allegations in the FAC are not sufficiently particular to plead a claim for fraudulent misrepresentation. Plaintiff alleges that Defendant and Clancy had falsely represented a "business relationship that could serve as guarantor for [Defendant]" but provides no further information.[4] (ECF No. 9 at 19.) Nor does Plaintiff allege with specificity what other false representations Defendant made, besides generally that "he would share the proceeds" of the Startup Accelerator, Inc. and that he represented that he has listed her as a beneficiary on "all accounts, payable on death." (ECF No. 9 at 14.) These allegations are overly general and do not address the "specific content" of the representations—for example, what sort of proceeds or accounts. Plaintiff does not allege the time these representations were made—to the best of its ability, the Court can only tell that this may have happened sometime after August 2022—nor does Plaintiff allege where these representations were made. The Court finds that Plaintiff has not met her burden under Rule 9(a) and has failed to state a claim.

---

[4]Indeed, Plaintiff's FAC is not even clear as to who is advising whom in this alleged business relationship. In the same paragraph, Plaintiff alleges both that "Mr. Clancy became [Defendant]'s closest financial and legal advisor," and also that "[Defendant] advised Mr. Clancy. . ." (ECF No. 9 at 13.)

### C. Breach of Oral Contract

Defendant argues in his Motion that the terms of the alleged oral contract are unenforceable because they are indefinite, and because they are barred by the Nevada Statute of Frauds. (ECF No. 14 at 5.) Plaintiff counters that Defendant misunderstands the total amount she claims and that the Statute of Frauds does not bar her claims because she can invoke the doctrine of promissory estoppel. (ECF No. 19 at 9-10.)

Here, the Court need not consider either of the parties' arguments because the Court finds that Plaintiff's claim for relief is not cognizable. It is long established that "Courts will not lend their aid to enforce illegal contracts or actions grounded upon immoral or illegal acts." *Drexler v. Tyrrell*, 15 Nev. 114, 131 (1880) (collecting cases); *see also Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982) ("Generally, contracts made in contravention of the law do not create a right of action.") Plaintiff's claim for breach of oral contract arises from the spring 2022 car accident, after which Plaintiff, at Defendant's direction, falsely reported to her insurance company that she was driving the car at the time of the accident in exchange for Defendant's promise to reimburse her for the cost of the deductible, repairs, and any differential in the cost of insurance. (ECF No. 9 at 20-21.) In asking the Court to enforce this oral agreement, Plaintiff effectively asks the Court to enforce the parties' oral agreement to commit auto insurance fraud. The Court finds that even if such an agreement was formed, it would be void due to illegality. The Court thus finds that Plaintiff fails to state a claim upon which relief can be granted.

### D. Promissory Estoppel

Defendant argues that Plaintiff's claim fails because the FAC failed to allege a clear and definite promise, and because any reliance Plaintiff put in Defendant was unreasonable in light of the Defendant's "red flags." ECF No. 14 at 5.) Plaintiff counters in her Response that the promise was sufficiently clear because "[Defendant] specifically promised to repay the funds that he borrowed and to reimburse [Plaintiff] for vehicle damages and increased insurance costs." (ECF No 19. at 10).

"To establish promissory estoppel four elements must exist: '(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.'" *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1209 (Nev. 2015) (quoting *Pink v. Busch*, 691 P.2d 456, 459-60 (Nev. 1984)). The promise giving rise to a cause of action for promissory estoppel must be "clear and definite, unambiguous as to essential terms, and the promise must be made in a contractual sense." *Id.* (internal quotation marks and citation omitted).

The Court generally agrees with Defendant. To the extent that Plaintiff seeks to base her promissory estoppel claim on the parties' alleged oral agreement to commit insurance fraud, the Court dismisses this claim for reasons stated *supra*. And to the extent that Plaintiff's claim is based on Defendant's promise to "be reimbursed and/or looked after in the future," the Court finds that Plaintiff has not stated a promise that is clear or definite, nor unambiguous as to essential terms. (ECF No. 9 at 21-22.) For example, Plaintiff alleges in her FAC that Defendant promise "he would take care of her" if she lost her job (ECF No. 9 at 11) and that Defendant "repeatedly made promises to reimburse [Plaintiff]" for various expenses made using Plaintiff's Chase Bank account (*id.* at 10). However, none of these promises are sufficiently clear or definite. The Court thus finds that Plaintiff has failed to state a claim.

### E.     Unjust Enrichment

Defendant argues that Plaintiff's claim fails because the FAC pleads an express contract which renders quasi-contract claims implausible, and that the claim must also be dismissed because it is duplicative of other claims. (ECF No. 14 at 5.) Plaintiff counters in her Response that there was no written contract, so the claim is not barred. (ECF No. 19 at 11.)

"Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Korte Constr. Co. v. State on Rel. of Bd. of Regents of Nevada Sys. of Higher Educ.*, 492 P.3d 540, 543 (Nev. 2021) (en banc) (internal citation and quotation omitted). But "the person conferring the benefit must have a reasonable expectation of payment and the circumstances are such that equity and good conscience require payment for the conferred benefit." *Id.*

Plaintiff is correct that she does not allege the existence of an express contract and therefore Defendant's argument that the claim must be dismissed is untenable. However, the Court finds that Plaintiff has not alleged sufficient facts to show that she had any reasonable expectation of payment from Defendant for these alleged loans. On the contrary, the facts Plaintiff alleges seem to show that Plaintiff provided Defendant with access to her bank account, and Plaintiff repeatedly gave him money for a business that she knew did not exist and likely was improperly managed and money for basic living expenses and sundries.

For example, in March 2022, Plaintiff changed her Chase Bank privacy and security settings to allow Defendant access to her accounts, and Defendant "guaranteed money would only be spent on food and Uber rides." (ECF No. 9 at 9-10.) In April 2022, Defendant was still using Plaintiff's bank account and stated that he needed financial assistance because he was not gainfully employed and had an outstanding felony warrant. (*Id.* at 10.) Still in May 2022, he claimed that he was a day trader and investing money obtained from her, while also requesting financial help for his day-to-day living expenses. (*Id.* at 12.) Sometime in or after June 2022, he gambled money using funds from Plaintiff and lost the winnings "somewhere in the neighborhood." (*Id.* at 13.) At another point in time, Defendant claimed his brother took his debit card, so he needed money from Plaintiff. (*Id.* at 15.)

In sum, while Plaintiff alleges facts sufficient to state that she conferred a benefit upon Defendant and Defendant appreciated such a benefit, the Court cannot find under these circumstances that Plaintiff has adequately pled factual allegations to make plausible that she had any reasonable expectation of the return of her funds.

However, the Court cannot find that amendment is futile because Plaintiff may plausibly allege how her expectation of payment was reasonable despite Defendant's alleged repeated failures to repay her. Accordingly, the Court dismisses this claim without prejudice and with leave to amend.

### F.    Intentional Infliction of Emotional Distress ("IIED")

Defendant argues that Plaintiff's IIED claim fails because even accepting the allegations as true, the conduct does not meet the "extreme and outrageous" level required under Nevada law. (ECF No. 14 at 5.) Defendant argues that while the FAC alleges a toxic and manipulative romantic relationship with financial disputes, Plaintiff has not alleged facts sufficient to state an actionable IIED claim. (*Id.* at 5-6.) Plaintiff counters in her Reply generally that Defendant attempts to "minimize the parties' business relationship." (ECF No. at 11.)

To state a claim for IIED, a plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Extreme and outrageous conduct is that which is "outside all possible bounds of human decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

The Court generally agrees with Defendant. As an initial matter, while the FAC raises many factual allegations regarding Defendant, Plaintiff fails to specify which allegations give rise to her IIED claim. Plaintiff alleges that Defendant engaged in numerous acts, including crashing her vehicle, giving her a fungal infection, and making a series of financial misrepresentations, but does not specify which caused her to suffer

extreme emotional distress. And while the Court finds that Defendant's alleged behavior was unsavory, none of the behavior Plaintiff alleges rises to the level as "outside all possible bounds of human decency" or is "utterly intolerable in a civilized society." *Maduike*, 953 P.2d at 26. Accordingly, the Court finds that Plaintiff fails to state a claim.

### G. Exploitation of a Vulnerable Adult

Defendant moves to dismiss Plaintiff's claim brought under NRS § 200.5092(8). Defendant argues that Plaintiff merely lists off diagnoses of MS, Autism, ADHD, and PTSD without alleging any impairments during the relevant period. (ECF No. 14 at 6.) He further argues that Plaintiff failed to plead "exploitation" under NRS § 200.5092(3) and that the claim is time barred. (*Id.* at 7.) Plaintiff counters that "MS isn't just a one and done kind of thing," and that she sufficiently pled a relationship of "trust and confidence" for her claim. (ECF No. 19 at 12.) Plaintiff also argues that due to the discovery rule, Plaintiff could not have learned that she was exploited until April 2024, and equitable tolling should apply. (*Id.* at 13.)

The Court generally agrees with Defendant that Plaintiff failed to state a claim for which relief could be granted. Plaintiff has cited in an inapposite section of law. Plaintiff's cause of action—abuse of a vulnerable person under NRS § 200.5092—is improper because Plaintiff cites to a criminal law that provides Plaintiff no private cause of action and Plaintiff has cited to no legal authority stating otherwise. Because the Court agrees that Plaintiff has failed to state a claim for which relief can be granted, the Court will dismiss this claim.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 14) is granted. The Court dismisses the claims with prejudice except as to the unjust enrichment claim.

As to that claim, dismissal is without prejudice and with leave to amend. Plaintiff is given leave to file an amended complaint to cure the deficiencies of her unjust enrichment claim within 30 days. Failure to timely file an amended complaint to cure the deficiencies of her unjust enrichment claim will result in dismissal of this claim with prejudice.

DATED THIS 18th Day of December 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE